IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2010

## STATE OF TENNESSEE v. JAMES DEMARIO NABORS

Direct Appeal from the Circuit Court for Tipton County
Nos. 5585, 6274, 6275, 6389, 6390     Joseph H. Walker, Judge

No. W2009-02373-CCA-R3-CD  - Filed January 14, 2011

While on probation, the defendant, James Demario Nabors, pleaded guilty to one count of possession of marijuana, one count of possession of a Schedule II controlled substance with intent to deliver .5 grams or more, and one count of introduction of contraband into a penal institution in case number 6274. Simultaneously, he pleaded guilty to one count of delivery of a Schedule II controlled substance less than .5 grams, possession of a Schedule II controlled substance with intent to deliver .5 grams or more, one count of possession of a firearm during a dangerous felony, and one count of felony possession of a firearm in case number 6390. In exchange for conceding his probation violation and his guilty pleas, the defendant received a total effective sentence of twenty-four years at 35% and, consecutively, five years at 100%. On appeal, the defendant argues that the trial court erred by denying any form of alternative sentencing and imposing confinement in cases 6274 and 6390. Following our review of the record and the parties' briefs, we affirm the trial court's sentencing decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Gary F. Antrican (on appeal), District Public Defender, Covington, Tennessee, and Tracey A. Brewer-Walker (at trial), Ripley, Tennessee, and Jake Erwin (at trial), Memphis, Tennessee, for the appellant, James Demario Nabors.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and P.N. Oldham and James Walter Freeland, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Background

On November 28, 2007, the defendant, James Demario Nabors, pleaded guilty in case number 5585 to delivery of less than .5 grams of a Schedule II controlled substance, a C felony. The trial court sentenced him as a standard offender to three years of supervised probation.

While he was on probation, a Tipton County grand jury indicted the defendant, in case number 6274, on one count each of simple possession of marijuana, a Schedule VI controlled substance; possession of cocaine, a Schedule II controlled substance, with intent to deliver .5 grams or more; and introduction of contraband into a penal facility. The offenses leading to this indictment occurred on March 21, 2008. The defendant pleaded guilty to these charges, and at the guilty plea submission hearing, the state summarized the underlying facts as follows:

Deputy Sheriff McGee [while] on routine patrol observed a vehicle [traveling] south on Wilkinsville, observed that [the defendant], . . . the driver, was not wearing a seatbelt[, and] initiated a traffic stop.

[The defendant] was asked for proof of financial responsibility. [The deputy checked] for locals and was advised . . . [that the defendant] had a warrant out of Millington for assault. Corporal Thompson also made the scene. [The defendant] was taken into custody for the warrant out of Millington.

A search of the vehicle revealed a cigar which had a green leafy substance inside which was analyzed to be marijuana. A search of [the defendant's] person found a film canister which had a white powder which tested positive and later indicated to be . . . well over a half a gram.

After arriving at the jail, a bag containing approximately 16 rocks of crack cocaine weighing over two grams was found on [the defendant's] person by the correctional officer. So that was inside the jail after [the defendant] would have been warned that if he [had] anything else that it [needed] to be brought to the attention of the correctional officer.

On July 6, 2009, while he was on probation in case number 5585 and out on bond in case number 6274, a Tipton County grand jury indicted the defendant, in case number 6390, on one count each of delivery of less than .5 grams of cocaine, a Schedule II controlled substance; possession of cocaine, a Schedule II controlled substance, with intent to deliver .5 grams or more; possession of a firearm during the commission of a dangerous felony; and felony possession of a handgun. The delivery charge in this indictment occurred on July 5, 2008, and the remaining charges occurred on July 8, 2008.

The defendant pleaded guilty to the charges in case number 6390, and at the guilty plea hearing, the state summarized the facts underlying these charges as follows:

> July 5 was a sale utilizing undercover operatives who were given audio/video recording devices [and] given $100 in prerecorded money. The confidential sources were followed to Jerry's Quick Stop by Investigator Robbins of the drug task force, and they were then told to meet . . . the defendant[] at Bluff Cove to exchange the $100 for crack cocaine.

> Investigator Robbins followed the confidential source but stayed at a safe distance. At approximately 6:13 p.m. he regained visual contact, the officer did, with the confidential sources, and a few minutes later the confidential sources turned over to Investigator Robbins the cocaine base and the audio/video recording device which was the copy of the transaction.

> This video indicated that in fact [the defendant] had delivered cocaine, crack cocaine, or cocaine base, in an amount . . . less than half a gram. It was a small amount. There was some confusion. The officer thought that more had been delivered than actually was delivered, but it was analyzed by the [Tennessee Bureau of Investigation (TBI)] crime lab to be less than half a gram. Certainly the purchase money was for something more than half a gram, but the lab analyzed it to be less than half a gram.

> The event of July 8 would be that on that date, again involving Investigator Randall Robbins of the drug task force, [the defendant] was arrested by agents of the drug task force on various cases, which arrest occurred at the Circle K Store which is in Munford in south Tipton County.

> At that time [the defendant] . . . was occupying a vehicle along with a Rico Miller and a Jamie Gibbs. Once the three subjects were secured, a search of the vehicle incident to arrest produced cocaine which was analyzed by the TBI lab to be over half a gram. This was located in black plastic along with

a .22 caliber revolver loaded with nine rounds of .22 caliber hollow points that had been X'd [sic] on the ends that was lying on the floorboard in front of the passenger front seat. There was also a small amount of marijuana in a valve located in the console area along with a box of .22 caliber ammunition.

And the officers would testify that [the defendant] stated that the weapon along with the contraband, the drugs, [were] his and that the other subjects had nothing to do with either the weapons or the contraband.

On April 27, 2009, the defendant's probation officer filed a probation violation report because authorities charged the defendant with the offenses committed on July 5 and 8, 2008. The defendant's probation officer filed a second probation violation report alleging that authorities arrested the defendant and charged him with vandalism and assault[1] and that the defendant failed to obtain his probation officer's permission before moving, failed to report to the probation office as required, and failed to pay court costs.

On March 2, 2009, in case number 6275, a Tipton County grand jury indicted the defendant for felony failure to appear. On June 7, 2009, a Tipton County grand jury indicted the defendant for felony failure to appear in case number 6389. Ultimately, the prosecution dismissed these charges.

On October 16, 2009, the defendant entered a blind plea of guilty to all of the charges in cases 6274 and 6390. The trial court held a combined revocation and sentencing hearing on November 4, 2009, for cases 5585, 6274, and 6390. At the hearing, the defendant stipulated that the trial court should revoke his probation in case number 5585. Regarding cases 6274 and 6390, the defendant stipulated to the accuracy of the Board of Probation and Parole Investigation Report. The report reflected that the defendant had prior convictions for evading arrest, criminal impersonation, fourteen traffic offenses, and five drug offenses. The report also showed that the defendant had a community corrections sentence in 2000, which the court twice revoked in 2002 and 2004. Moreover, the report stated that the prosecution submitted as enhancement factors that:

[a]t the time the felony was committed, one (1) of the following classifications was applicable to the defendant:
(A) Released on bail or pretrial release, if the defendant is ultimately convicted of the prior misdemeanor or felony;
(B) Released on parole;
(C) Released on probation;

---

[1] The court dismissed these charges.

(D) On work release;

(E) On community corrections;

(F) On some form of judicially ordered release;

(G) On any other type of release into the community under the direct or indirect supervision of any state or local governmental authority or a private entity contracting with the state or a local government . . . .

Tenn. Code Ann. § 40-35-114 (13).

The defendant reported to the Board of Probation and Parole that he did not have any mental health problems or disabilities. He stated that he was in good physical health except for high blood pressure, for which he takes medication. The defendant began using alcohol and marijuana when he was eighteen years old and stated that he used them daily before his incarceration. The defendant further stated that at age twenty-three, he began using cocaine on weekends, and he continued to use it until January 2009. In February 2005, the defendant completed substance abuse treatment at the Lighthouse in Memphis, Tennessee.

The defendant further reported that he and his wife were separated, and if the court released him, he would live with his mother and children in Drummonds, Tennessee. The defendant last worked in 2007. The defendant's probation records show that the defendant worked for his cousin, Fred Moore, in May 2005 and was unemployed for most of 2007. The Board of Probation and Parole could not independently verify his employment history.

At the sentencing and revocation hearing, the defendant testified that he was thirty-one years old. His mother, Diane Cook, and his three children lived in Tipton County, Tennessee. The defendant agreed that most of his convictions were drug related and that he had been using drugs since he was a teen. The defendant stated that he worked before his last arrest, and his boss, Alex Johnson, told him that he still had his job. The defendant did not make much money at his job, and he spent the money he made on his children and mother. However, he stated that he did not get the drugs that he used free.

The defendant accepted responsibility for using drugs and said that he was "going to stay away from the people that us[e] drugs." He said that he was trying to stop using drugs, and he wanted to get help for his drug use. He stated that he completed six months of treatment at the Lighthouse in Jackson, Tennessee[2]. After his stay at Lighthouse, the

_____

[2] The Board of Probation and Parole Investigation Report stated that the defendant attended the Lighthouse program in Memphis, Tennessee; however, the defendant testified that he completed the program in Jackson, Tennessee.

defendant began using drugs again. He stated that since he has been in jail, he has thought about what he wants to do with his life. The defendant testified,

> I just want to change my life and be a better person and be out there with my kids and my mom. I just found out my mom has cancer, and I need to be there with her. And . . . she got [sic] custody of my kids. If something happen[s] to her, my kids will go back to the [s]tate.

He explained that his mother had cervical cancer, and if something were to happen to her, his children would be in the state's custody. He said that he "want[ed] to face [his] own responsibility and do right and take care of [his] kids." His mother did not work; however, she was responsible for taking care of the defendant's children and providing the defendant's legal assistance.

The defendant acknowledged that he was facing "decades of service" for his crime and stated that instead of preparing for and going to trial, he wanted to accept responsibility for his actions. The defendant stated that one charge for which he accepted responsibility involved two other people, Jamie Gibbs and Rico Miller. The defendant explained that these people were family members, and he did not attempt to direct "any misdeeds" toward them. Regarding case number 6274, the defendant admitted that he had drugs on him when the officer stopped him.

While incarcerated, the defendant had been speaking with various rehabilitation programs. He spoke with a representative at the Synergy Treatment Center, and they agreed to allow the defendant into their one year long-term treatment program. The defendant asked the trial judge "to give [him] another chance to go to rehab, get [himself] together, so [he] could be [a] better man and take care of [his] kids and be there for [his] mom." The defendant said that he had been incarcerated for nine months and had learned his lesson. The defendant said that he could be a better person, resist drugs, and get his life together. He understood that it was the court's decision whether to grant him alternative sentencing. He acknowledged that he had another charge "looming out there" and said that he would consider accepting responsibility for the charge after he looked at the case.

He agreed that he had "time and time again" said that he would get his life together. The defendant stated that when a judge had previously allowed him to go through rehabilitation, he finished the program and did not go back. The defendant admitted that authorities arrested him while he was on probation in case number 5585. He explained that he had not learned his lesson then and was "[r]unning with the wrong crowd." He also admitted that he was using drugs due to the influence of "the wrong crowd." He stated, however, that he did not blame anybody but himself for his faults.

-6-

The defendant told the judge,

> I know that I've made bad choices over the years, and I just want to see if I can get a chance to get my life together and raise my kids and be there for my mom through her cancer. And if . . . you would let me go to rehab and get myself together, I won't be back in your court. I'll abide by the rules. I'll be at my visits, pay my fines, and I won't fail no [sic] drug screens.

Diane Cook, the defendant's mother, testified that she was fifty-two years old. She had custody of the defendant's children and said that she loved them. The children were twelve years old, ten years old, and two months old. While the defendant was incarcerated, Ms. Cook helped him in finding rehabilitation programs. She found the Synergy program for the defendant and contacted them. Ms. Cook thought that the defendant could do well in "a Synergy-type program where he'd have to stay a full year" and stated that it would be "fine" if the court would "give him a little bit more" than a year. She stated that she needed the defendant there with her because she feared that if something happened to her the children would be separated and moved around. She stated that the children had come from an abusive mother who had cut and choked them.

> Regarding the defendant's sentencing, Ms. Cook said to the trial judge,

> Please, Judge, please, Your Honor, please have it so he can get some type [of] help. I don't care if it's a year or two years. Because I have had a heart attack, I have Lupus, my lungs rate 50 percent, I have CPO, and then my cancer. I just want him to get his life together before it's too late, while I am up on my feet right now.

She stated that she would do whatever she could to help the defendant meet his responsibilities because he was her only child. Ms. Cook had no criminal convictions. Ms. Cook addressed the court again saying,

> Your Honor, if you can just give my son another chance to get some help instead of jail time. He's been back there nine months. If you try him this time and see how long he can stay away from drugs and alcohol or whatever, I [sic] appreciate it, because I really need him home.

D.N.[3], the defendant's twelve-year-old son, testified that he wrote a letter stating that he wanted to testify at the defendant's hearing. D.N. testified that he "wanted [his] dad to get some help, and [he] wanted him to leave [jail]." He knew that his father had committed crimes and had to accept responsibility for them, but he "just want[ed] to see if [his] dad could have [sic] some help . . . ."

After hearing the evidence, the trial court revoked the defendant's probation in case number 5585. The court dismissed the charges in cases 6275 and 6389 on the motion of the state. Regarding cases 6274 and 6390, the court, considering the Board of Probation and Parole Investigation Report, the testimony at the hearing, and the principles of sentencing, found that it should sentence the defendant as a multiple offender to the felony offenses. The court further found that the defendant had convictions in addition to those necessary to establish the appropriate range. As mitigation, the court found that the defendant's conduct neither caused nor threatened serious bodily injury, that he had a substance abuse problem, and that his offenses primarily have dealt with substance abuse.

Finding that the defendant did not qualify for probation and was not an appropriate candidate for alternative sentencing, the court sentenced the defendant as follows:

| Case Number 6274 | | | |
|---|---|---|---|
| Count | Offense | Sentence | Conviction Class |
| 1 | Possession of marijuana | 11 months, 29 days | A misdemeanor |
| 2 | Possession of cocaine with intent to deliver more than .5 grams | 12 years | B felony |
| 3 | Introduction of contraband into a penal facility | 6 years | C felony |
| Case Number 6390 | | | |
| Count | Offense | Sentence | Conviction Class |
| 1 | Delivery of cocaine less than .5 gram | 6 years | C felony |
| 2 | Possession of cocaine with intent to | 12 years | B felony |

---

[3] It is this court's policy to refer to minors by their initials.

| | | | |
|---|---|---|---|
| | deliver more than .5 gram | | |
| 3 | Possession of a firearm during the commission of a dangerous felony | 5 years at 100% | D felony |
| 4 | Felony possession of a handgun | Merged with Count 3 | E felony |

In case number 6274, the court gave the defendant credit for time served on count one and sentenced counts two and three concurrently for an effective sentence of twelve years at 35%. In case number 6390, the court ordered the defendant to serve counts two and three consecutively but concurrently with count one for an effective sentence of twelve years at 35% and five years at 100%. The defendant's total effective sentence is twenty-four years at 35% and, consecutive to that, five years at 100%. From these sentences, the defendant appeals.

**Analysis**

On appeal, the defendant argues that the trial court erred in denying alternative sentencing in cases 6274 and 6390[4]. The defendant asserts that, because of his drug abuse, he qualifies for alternative sentencing under the "special needs" provision of Tennessee Code Annotated section 40-36-106(c). He contends that the evidence at the hearing showed that his special needs could best be served and treated in the community. We disagree.

When an accused challenges the length and manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus,* 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

A defendant is eligible for probation if the actual sentence imposed is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute.

---

[4] The defendant does not appeal the court's probation revocation in case number 5585.

*See* Tenn. Code Ann. § 40-35-303(a). A defendant should be considered a favorable candidate for alternative sentencing if the defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony and there exists no evidence to the contrary. Tenn. Code Ann. § 40-35-102(6), Sentencing Commission Comments. However, this presumption is unavailable to a defendant who commits the most severe offenses, has a criminal history showing clear disregard for the laws and morals of society, and has failed past efforts at rehabilitation. *Id*. § 40-35-102(5); *State v. Fields,* 40 S.W.3d 435, 440 (Tenn. 2001). Also, the presumption in favor of alternative sentencing may be rebutted by facts contained in the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record. *State v. Parker,* 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Pursuant to Tennessee Code Annotated section 40-35-103, a trial court may determine whether incarceration rather than alternative sentencing is appropriate if the evidence shows that:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). As part of its determination, the trial court may also consider the defendant's potential or lack of potential for rehabilitation. Tenn. Code Ann. § 40-35-103(5). Additionally, the defendant's lack of truthfulness or candor is an appropriate consideration as it relates to the defendant's potential for rehabilitation. *State v. Nunley,* 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

Tennessee Code Annotated section 40-36-106 governs which defendants are eligible for a community corrections sentence. The statute provides, in pertinent part:

> (a)(1) An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:

>> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not

involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
(C) Persons who are convicted of nonviolent felony offenses;
(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
(F) Persons who do not demonstrate a pattern of committing violent offenses [.]

Tenn. Code Ann. § 40-36-106(a). Section (c) of this same statute, which is sometimes referred to as the "special needs" provision, states:

Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

In other words, felons not otherwise eligible under the criteria of subsection (a) are eligible under subsection (c) of Tennessee Code Annotated section 40-36-106 if they are unfit for probation due to a history of chronic alcohol abuse, drug abuse, or mental health problems, but their special needs are better treatable in a community corrections program than in incarceration. This court, in *State v. Staten,* 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989), interpreted the words "who would be usually considered unfit for probation" to mean that in order to be eligible for placement in the community corrections program pursuant to Tennessee Code Annotated section 40-36-106(c), a defendant must be otherwise eligible for probation under the sentencing act. *See also State v. Cowan,* 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000); *State v. Kendrick,* 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); *State v. Boston,* 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); *State v. George C. Peery, III*, No. E2008-00086-CCA-R3-CD, 2009 WL 537064, at *4 (Tenn. Crim. App., at Knoxville, Mar. 4, 2009); *State v. Jennifer Leslie Pendleton*, No. E2007-00578-CCA-R3-CD, 2008 WL 2805609 (Tenn. Crim. App., at Knoxville, July 22, 2008). The rationale for the requirement that a defendant must be otherwise eligible for probation under the sentencing act to be eligible for community corrections is "that the waiver of fitness for probation [contained in section 40-36-106(c)] is meaningless, unless the normal statutory criteria for probation apply to subsection (c) participants." *State v. Rhonda Lorraine Hanke*, No.

03C01-9707-CC-00254, 1998 WL 695452, at *2 (Tenn. Crim. App. at Knoxville, Aug. 20, 1998) (citing *Staten,* 787 S.W.2d at 936).

Here, the trial court denied alternative sentencing because it found that the defendant did not qualify for probation, and the defendant's case was "not an appropriate case for alternate sentencing." The defendant pleaded guilty to possessing a firearm during the commission of a dangerous felony, an offense which Tennessee Code Annotated section 39-17-1324(e)(2) specifically excludes from probation and community corrections sentences. Moreover, the defendant here is ineligible for probation because his sentence is not ten years or less, and he is a multiple offender. *See* Tenn. Code Ann. §§ 40-35-102(6), 40-35-303(a). Consequently, he is likewise ineligible for "special needs" community corrections sentencing under section 40-36-106(c). Accordingly, we affirm the trial court's imposition of incarceration.

## Conclusion

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

-12-